Our next case this morning is Cline v. Sunoco. Case number is 23-7090. Ms. Murphy, you may proceed. Thank you. Good morning, Your Honors, and may it please the Court, Aaron Murphy on behalf of Sunoco. I'm going to endeavor to save three minutes of my time for rebuttal. Under Oklahoma's Production Revenue Standards Act, both whether and how much interest someone is entitled to for a failure to timely pay oil sale proceeds turns on whether and when they secured marketable title. If someone doesn't have marketable title, then they're not entitled to proceeds at all, let alone to any interest for the failure to timely pay them. And even if someone does have marketable title, how much interest they're owed for a late payment depends on when they acquired it. Those principles pose two fatal problems for the $180 million class action judgment that was entered here. First, for roughly two-thirds of the judgment is owing to proceeds that were not paid to any actual owner with marketable title, but were instead just achieved to an unclaimed property fund after Sunoco couldn't identify or locate anybody who had marketable title to the particular well interest at issue. And there's no evidence in this record at all as to whether anyone has marketable title as to those particular well interests. What about the testimony of Sunoco's representative? Is it Mr. Koehling? Am I saying that right? I think that's right. Didn't he say that, and I'm quoting, there's no issue about whether these people have a right to be paid their principal proceeds? I think the best understanding there is he was talking about the people who got paid proceeds payments, because there are no people associated necessarily with the- Well, there are people. They just haven't been identified. There are people. I mean, theoretically. Well, what do you mean theoretically? Somebody is entitled. So to exclude humans from the picture doesn't really make much sense, does it? Well, actually, to be clear, there's not someone who's necessarily entitled, because the way the PRSA works, which is different than, you know, your ordinary types of statutes with ownership, is it's not enough that you own the well interest in the sense of I'm the person, if I went and perfected my title, I could. You are not entitled to payment under the PRSA unless you actually have marketable title. And at any given time- Well, that comes back to the question, though. It seems like your representative said everyone had marketable title. I think if you look at that testimony in context, he was talking about the people that Sunoco had paid. And there are people in this class that Sunoco had paid. Roughly one third of the judgment is owing to people that we did pay. Did the district court make any finding on this? There was a trial. I mean, that was a trial testimony. The court made no finding about whether anyone had marketable title. It just said it was our burden to prove- Well, didn't it make a finding by virtue of making the award? The judge heard the testimony and said they're entitled to this award. He did not make a finding that every class member ever- Isn't the finding implicit in the award? To the extent there's an implicit finding, it's incorrect. Is it clearly erroneous? It's clearly erroneous and legally incorrect. Why is it clearly erroneous? It's clearly erroneous because as to these unclaimed property funds, the ones that were just acheted to unclaimed property, the only basis that Mr. Klein offers for saying that the evidence in the record sustained that they had marketable title is the bare fact that we acheted the funds to unclaimed property. Who has the burden on marketable title? So it depends. I mean, we think it's always on the plaintiff. But the one point on which I don't think that Mr. Klein disagrees with us is that the plaintiff has the burden on the question of whether you have marketable title at all, whether you're entitled to the proceeds. And that's really key here because as to the one-third, they can say, look, you paid them, so you must have agreed they had marketable title. But you can't say that as to the two-thirds because we didn't actually pay proceeds to anybody. We acheted them to unclaimed property because we didn't know if there was someone who had marketable title. And so when he says you can infer that everyone had marketable title because we paid everybody, that's just flatly, flatly wrong. We did not pay an actual owner for the two-thirds of the judgment. The representative of Sunoco makes a statement at trial, under oath, and now you're telling us on appeal that it was wrong. I think you have to look at the statement in context. I understand that, and we will. But is that what you're saying, that the statement was wrong? To the extent he was saying that we have determined that everybody in this class has marketable title, that is wrong. It is not correct, and it's why I don't think you can read his statement to say that. I mean, as this Court probably remembers from the last time we were here on appeal, there are thousands of folks in this class where there's literally nobody. There's no name identified at all. So we certainly couldn't go up there on the stand and testify. We're confident that an unknown stranger has marketable title. We don't even know who's claiming marketable title. But we now have a designation for them in the sense that the unclaimed state funds are their agent or their representative. They stand in for them. The problem is that we don't know if there's somebody who has marketable title and is entitled to that. You have to have. You cannot be entitled to any interest or proceeds if you don't have marketable title. And again, I think we all agree on that. You cannot be entitled to the proceeds that are sitting in unclaimed property if you don't have marketable title. And so there's money sitting there, but there's no way in this record to know if there's an actual person who's entitled to it because there was no effort on the class's part to prove that these unclaimed property funds are actually the property of somebody with marketable title. And what they say in their brief when we made this argument, they said just, well, you paid it to unclaimed property, so you must think someone owns it. And that's just wrong as a matter of how the PRSA works. We have no choice but to pay it to unclaimed property. There's not an option under the PRSA. If you don't think somebody has marketable title, you don't get to keep the proceeds. Subsection A of 570.10 says you have to, if you are holding proceeds, you have to segregate them and continue to hold them in case someone comes along with marketable title. And what we do and everybody does in the industry is at a certain point, you know, you say we've gotten to the point where these seem to be abandoned, and so the state basically takes on the responsibility of holding them in case someone comes along. That's the industry practice, is that what you're telling us? That's everybody's, yes, and that's not disputed, and nobody says that's wrong. But does the PRSA instruct Sunoco to, as you put it, sheet the proceeds? It instructs us to segregate them. Yeah, but segregate could simply mean that they keep it on their own books. We could hold it in perpetuity, but nobody has ever suggested that you need to do that because. Well, why not? Because at a certain point. Statute doesn't require you to send it to the unclaimed property. And I guess what I'd say is that I'm not really sure why it would make any difference. I mean, whether we held them or we sent them to unclaimed property. I understand. Could we just back up for one second? I want to set the table a little bit more. You're making broad arguments, too, about class certification, standing, and damages. Yes. And I take it that the argument about markable title maybe goes both to class certification and damages. Is that correct? Yes, and it also goes to liability in a sense. So it goes to a lot of different issues. It goes to a lot of things. Yes. All right. But I have a question about the class certification. Your brief seems to read a bit. It's almost an all or nothing argument. Either class certification was proper or it wasn't. Would you argue that there could be some middle ground? I mean, you're talking about these two-thirds of the class who are unidentified. What about the identified members? Is that still a valid class? Sure. So I don't think it is, but I also will start by saying I do think that there's a distinct issue such that this court could reach the conclusion that the two-thirds is out but think there's a different analysis for the one-third. Because the two-thirds really is this separate problem of we don't know who they are, we don't know if they ever had marketable title. That's different. As to the one-third, at a minimum, we will agree that as to the one-third, the fact that we paid them is sufficient evidence that they likely did have marketable title when we paid them. So that's what differentiates them from the two-thirds. Where we think there's still a certification problem, even if Mr. Klein had confined the class to the one-third, as we urged him and the district court to do, is you'd still have the question of when marketable title was acquired, because that's what determines whether you get 6% interest or 12% interest or some combination of the two. And as to the one-third, we don't have evidence in this record, and we think that it couldn't have been provided consistent with Rule 23B to analyze that question, because the answer is different for everybody. It depends on their records, the history of that wealth. And what the district court said is you should have been able to come in and present all that evidence on, you know, tell us the answer quickly and you should have had a spreadsheet. Now, first off, I don't think that's really a reasonable, feasible thing to require in a class context to say, you know, defendant, it's your job to basically come in with an individualized case for tens of thousands of class members to make the class's life easier. But even if we had had that spreadsheet that told you exactly what everybody, you know, when we thought they got marketable title, all that would have been is our evidence on that question. And to be an adequate class member, Mr. Klein would have had to investigate whether we were right any time we said somebody was entitled to less than 12%. He would have had to go look at the files, and if he didn't think we were right, put on a case and say, hey, you know, you thought they didn't have this document, I talked to the class member, they actually did have this document, or you were looking at the wrong name or whatever it may be. And so really, the only way that you ever could have tried to do this on just a spreadsheet basis would have been to deprive class members of their rights to try on an individualized basis 12 versus 6. Now, the district court instead flipped the burden and said, this is your problem, and basically deprived us of the ability to try to prove 6 instead of 12. But at the end of the day, the real problem was this was just not going to work even as to the one-third, because you have to know when someone got a marketable title, and the answer to that question is different for every class member. And so I do think that there are totally independent additional problems as to the two-thirds. You have an ascertainability problem. You have the ascertainability problem is itself an individualized determination problem, because to figure out who the actual person who's the class member bound by this judgment is, you'd need to go figure out who has marketable title to those proceeds that are sitting in unclaimed property. So that, to me, you could say, look, we're going to start with the two-thirds, and that's an independent problem, and then separately examine the one-third. But I think the right answer is that you'd end up at the conclusion that this class just didn't work for anybody, because marketable title was such a pervasive issue as to all aspects, as to liability, as to damages, and that you just couldn't get around that. Well, liability was the first and predominant liability issue, of course, is whether you were required to pay it without a request, and that sort of predominates everything. It really doesn't, because we never disputed. We actually think what we did was okay, but we never asserted that it was a defense, a liability defense in this case, that someone hadn't asked for their interest. But that was the reason that you hadn't paid any of these class members. That was the reason for the class. That's right, but it didn't advance the litigation to resolve that question, because we weren't asserting it as a defense. And it didn't answer the question at all. But the district court actually had to address it. It did address it, and it was a predominant issue. And whether you challenged it or not, it had to be addressed. In fact, our first argument in response to their motion for summary judgment was, you don't have to answer this issue because it's irrelevant. Our contention is it was irrelevant and did not need to be answered at all, because it didn't address, it didn't resolve liability for huge chunks of the class. It didn't resolve it for two-thirds. It didn't resolve it for people who had indemnification agreements where they waived the right to interest. And we didn't assert it as a defense. So it just is a complete red herring. We argued in our opposition this is seeking an advisory opinion on something that's irrelevant. Opposition to what? To their motion for summary judgment on this question. I see I'm well into my rebuttal time, so if I may reserve a little bit of it. I appreciate it. Thank you. May it please the court. This case is a paradigm class action. It involves a class of 53,000 royalty interest owners to whom Sunoco simply failed to pay the full amount that it owed them. It paid them their principal proceeds. It did not pay them the interest it owed. The only thing that this case requires is for Sunoco to pay the remaining amount that is due. The class involved a common liability question that was decided on summary judgment in one stroke and is not even contested on appeal here. And a bench trial on damages was conducted that revealed that there were, in fact, no individualized issues affecting damages. And so the suggestion by Sunoco that either you have to conduct 53,000 individual trials on damages or, even worse, Sunoco gets to keep millions of dollars of money that it acknowledges it is not entitled to hold is just implausible. The rhetoric that you see in the Sunoco brief and the argument you've heard this morning does not match the record. And the court asked about the findings of the district court. And I want to make this point explicit. Sunoco is simply failing to grapple with the standard of review and failing to acknowledge the district court's factual findings. And I want to call your attention to three key findings that were made by the district court. First, Sunoco denies that most of these class members are identifiable. But, in fact, at page 436 of the appendix, the district court found, and I quote, for most payments to unclaimed property funds, Sunoco knew the identity of the owner. That finding is well-supported. It is not clearly erroneous. Counsel, can I stop you there? Of course. I want to make sure I understand this delta here between the one-thirds, two-thirds. So my understanding is Sunoco had paid the underlying royalties, and these are known persons. And I think you're referring to that there in that finding of facts. Yes, that's correct, Your Honor. So the two-thirds, they know who the people are. They're disputed just whether or not those people have marketable title. Is that where the delta is? Your Honor, they know who the vast majority of those people are. There is a small subset of that group, which is referred to as the undivided account, which the court dealt with in the prior appeal here, where they don't know the identity. But with respect to everyone other than that small subset, and that represents only $8 million of the total amount of the damages, they know the identities of those class members. They may not have perfect address information. They may not have received a signed division order, and therefore they've put the payments into suspense. But they know the identities of those individuals. And I will call your attention not only to the district court's finding at page 436, but look at the testimony at pages 817 to 26 of the appendix, where examples are given from the database. The Oklahoma City Board of Education is one of the class members. St. Anthony Hospital in Oklahoma City is one of the class members. A Caldwell Family Trust is one of the class members. That's true for all of these class members, 90% of the class, except those undivided accounts. And that's why the court said in its prior opinion in this case that individual damage awards were known for most class members. The only, quote, unidentifiable class members were those in the undivided accounts, which the district court has now resolved with its amended plan of allocation with a procedure that will allow those individuals to claim their funds. And so this is a fundamental fallacy of the Sunoco position, that these are somehow unidentified class members. They're not. They're known by name. They're known, in many instances, by address. For one reason or another, Sunoco just determined. Well, except for that one category. Except for that small category. Okay, well, let me ask you about that one category. Didn't the district court err by failing to consider how Klein could show that an owner in that category could be identified? No, Your Honor, because the question of identifiability, and I might ask for clarification, if the court's interested in the ascertainability aspect of class certification as opposed to another dimension, my answer would be different. But for purposes of ascertainability, which I think is the applicable legal question here, the question is whether the class is defined by objective measures that will make it objectively possible to determine who is in the class. And this class definition defines the class as anyone who received untimely proceeds payments, whether directly or to unclaimed property funds. These owners, who are represented in the undivided accounts, received proceeds payments. Proceeds payments were made to the unclaimed property funds with the information that is knowable about those owners, and now the amended plan of allocation assures that the interest will be paid in exactly the same way. Sunoco had enough information to pay them the proceeds it owed them. That's enough to pay them the interest in the same way, so when they make a claim to unclaimed property and prove that they're entitled to that particular interest, they will be able to recover the full amount of their damages. That's all that's necessary for identifiability.  I'm sorry, Your Honor? And what do they do to prove they prove marketability is what you're saying? Well, Your Honor, with respect to marketability, I think... What do they have to do to come to the fund and claim their... They have to prove entitlement in the sense that they have to prove they are the individual who has the right to claim a particular payment. So in the district court's plan of allocation, these undivided accounts are associated not with particular owners, but with particular payments that are identified by a will and a date of payment, for example. And so an owner would need to show, I have an interest in this well, I had the interest in that well as of the date this payment was made. That would be sufficient to claim the unclaimed property. But that's all about how you claim unclaimed property. That has nothing to do with Article 3. It has nothing to do with Rule 23. It has nothing to do with marketable title. The district court found, as a matter of fact, that these class members have marketable title. And I want to make a couple of points. In fact, let me make three points about this marketable title debate. The first is we should not overlook the fact that this is nothing more than an argument about individualized damages with respect to a small subset of the class. And the court repeatedly holds, and I'd call attention to your Naylor Firm's opinion and your medical decision, that class certification can be appropriate even where there need to be some individualized determinations about damages. The notion that liability was not really contested and was not the predominant issue here is just fanciful. Liability was contested throughout this litigation. They try to say it's advisory because when they were caught on their scheme, they tried to moot it by saying, we won't defend on that issue. That's why they say it was an advisory issue, because they're trying to just moot the question. At what point did they say they wouldn't defend on the issue? Your Honor, they take the position in the opposition to summary judgment, after having tried to moot Mr. Klein's claim by tendering a voluntary payment to him, that somehow this is advisory because they don't defend against the argument that a demand was necessary. And then if you read that brief, you'll see they go on to write several pages of defending their argument as to why a demand was necessary. So the notion that liability was not the predominant issue is fanciful. Once you establish that proposition, Naylor Firm's medical, that line of authority, makes it easy to affirm, even if you credit everything counsel says. Second point about marketable title. This issue affects a fraction of the class. The only indication that was ever raised in the evidence in this case by Sunoco to suggest there could be a question about marketable title related to the Sunoco suspense codes. Those suspense codes affect only 8% of the class members. Even if Sunoco were correct that every one of those suspense codes proved a lack of marketable title, it would reduce the total damage award by only $5.8 million. This is the tail wagging the dog. It is exactly the kind of issue for which Naylor Firm's and Medi-Call establish. You don't decertify a class. The third point, though, is the point that I was making, Judge, in response to your question, and it is that all of these owners have been found by the district court to have marketable title because they were paid their proceeds. And that finding is founded on this court's decision in Quinlan because in Quinlan, this court recognized that while owners have the burden in the first instance to show that they're entitled to receive proceeds, where proceeds have been paid, that supports an inference that there is no question about their entitlement to proceeds. The district court made exactly that finding, and I want to call your attention to two aspects of that finding. First, at page 429, Judge Matheson, this is the finding to which you alluded where the court noted that Mr. Koehling agreed that Sunoco had already sent every class member a check for proceeds and that there is no issue about whether those people have a right to be paid their principal proceeds. That is true for every well-interest owner in this class, whether they call them known or unknown, identified or unidentified, divided or undivided. That fact is true for all of them. And consequently... And that's by inference we're going to get there as to the folks that are... That is the inference that the district court as the fact finder drew from the fact that payments had been made. But the payment was essentially forced. I mean... Well, they have a right... To the fund. They have a right to withhold proceeds payments for so long as they believe that there is not a showing of marketable title. And so if Sunoco believes that marketable title is not established, it's not simply a matter that it's not obligated to pay interest. It's not obligated to pay the proceeds. And so in Quinlan, what this court said is where you have paid the proceeds, you can infer that there's not a dispute about title. And I would note that the Oklahoma Supreme Court earlier this year in the base decision followed that same kind of rationale. That was a case where the court said there's really no dispute here about title because Devin was paying proceeds to these owners. And here's the factual finding that I think matters with respect to that. This appears at page 473. It's when Judge Gibney is explaining why his original finding was sound. And he says, and I quote, Sunoco's contention that its payment of proceeds does not demonstrate legal entitlement defies logic. The court finds implausible that Sunoco paid people money that it did not owe them, especially considering the company's policy of withholding interest payments from their rightful owners in contravention of clear Oklahoma law. That was a factual determination that is not clearly erroneous. Counsel, can I pivot to damages? Of course, Your Honor. Punitive damages in particular.  So the Oklahoma Supreme Court has said PRSA claims are based on a breach of contract. As I recall, you pled two claims, a breach of contract and a fraud, which is a tort claim that you did not prevail on. So can you help me understand where, based upon Oklahoma statute saying that there are no punitive damages for a breach of contract, where you have a right to punitive damages in that award? Absolutely, Your Honor. And I welcome the opportunity to answer this question because we pleaded a PRSA claim and we pleaded a fraud claim. As the court recognizes, we did not prevail on the fraud claim. But the PRSA claim is not an obligation arising from contract. It is an obligation that arises from the statute independently. It's what the Oklahoma Attorney General calls a unique substantive right. But didn't Oklahoma Supreme Court in Purcell and then recently reaffirmed say otherwise? Within the context of the statute of limitations, not within the context of applying this provision of the Oklahoma statute about obligations that arise from contract. And there's two important distinctions to be made there. First, and I anticipated we might have this conversation, and so I brought Purcell with me to the podium. In Purcell, the final passage of the Oklahoma Supreme Court's decision specifically roots its rationale in the fact that there is a lease obligation between the plaintiff and the defendant in that case, the lessor and the lessee. That is why the Oklahoma Supreme Court said this obligation arises from contract. And I'll quote here from the final page of the opinion. Courts have looked to whether the existence of an agreement is a necessary element of the claim when determining whether the claim is a new substantive liability under a statute. There, the court said it's ex contractu because there was a lease between those parties. But there is no contract between Sunoco and any of these royalty owners. Remember, Sunoco is a first purchaser. They do not have the lease. They have no privity. And I'll call your attention in the record to page 863 and page 1114, where Sunoco's own witnesses acknowledge they have no contract with these royalty owners. Therefore, their obligation to pay interest in no way arises out of any contract. It arises solely out of the PRSA. Second answer, Your Honor, to that question is that Purcell, even if it were applicable, is not really the right line of authority because the Oklahoma Supreme Court in dealing with this question of whether an obligation arises out of contract has said since the Hall-Jones oil case in 1969 that there are cases where the contract is the mere incident that creates the relation that gives rise to a tort. Here, the failure to pay PRSA interest is a statutory tort. It's an obligation imposed on the first purchaser by statute. It does not arise from the contract. So it falls within that line of authority that the contract is just the incident that gives rise to the relation. Yeah, but you would have been on more solid ground had you pled a tortious interference with the contract, right? But you didn't do that. So don't we have to look at what your underlying claim was when we evaluate it? Well, Your Honor, I don't think it would be a tortious interference claim because that's a claim against a third party. And here we have a first-party claim. We have a statutory right against Sunoco to be paid the 12% interest. And so it's not a tortious interference claim. It is, in my view, a statutory tort where the Oklahoma legislature has imposed, again, what the Attorney General calls this unique substantive right. But again... Can I just ask you... Of course, Your Honor. And this is a follow-on to Judge Federico's question. To what extent on punitive damages are you relying on the provisions of the Energy Litigation Reform Act? Your Honor, the question with respect to the Energy Litigation Reform Act is whether this claim involves a recovery of proceeds. The Energy Litigation Reform Act says it is the exclusive remedy for a claim concerning the failure to pay proceeds. In our view, because proceeds and interest are bound up together, and as the district court rationalized, you haven't fulfilled your obligation to pay the proceeds of the due until you have made the royalty owner whole, and that is paying the full obligation, proceeds, and interest. That brings this case under the Energy Litigation Reform Act. And I'd call your attention in that respect to the Oklahoma Supreme Court decision in the Landis case, which established the proposition that a partial payment against an obligation is applied first against interest, then against proceeds, which means their incomplete payments have always left a balance due of proceeds. You'll notice in the reply brief there's no answer to Landis. But if the court takes a different view and concludes interest is not proceeds for purposes of the ELRA, then we're just not under that statute, which means we're under the ordinary Oklahoma punitive damages statute for which liability is amply established. Thank you, counsel. I'm sorry, I do have a question. I'm wondering about the extra statutory pre-judgment interest, and you're relying, as I understand it, on a district court opinion cockerel to say that that's appropriate under the statute. The compounding of the interest. The compound interest, right. Your Honor, I think the cockerel reasoning is correct. I would, if the court will permit me, I'd like to give a little explanation of why I believe that reasoning is correct. Okay. A little bit. A little. A little, yeah. Your Honor, I think the key here, and I'll try and make this very succinct, the language that's in dispute is what the phrase until the day paid means in this statute. Sunoco says it means until the day the proceeds are paid. And if you look at their reply brief, you'll see they are constantly interlineating the word proceeds into that language. Well, that's because the statute is pretty specific about it. I think not, though, Your Honor. You pay that portion of the proceeds not timely paid shall earn interest. It's specific. But the question is what the final phrase until the day paid is modifying. And this whole phrase, and Sunoco makes this point in the reply brief, but draws the wrong conclusion. This whole phrase, compounded annually, calculated from the end of the month in which production is sold until the day paid, this was all added to the statute in 1993. It is not modifying the payment of principal. It is explaining the compounding annually. It's the rule of the last antecedent. The phrase until the day paid is relating to the amount that is compounded annually, which makes sense. That's the whole definition of compound interest. Sunoco reading would completely nullify the definition of compound interest. Thank you, Your Honor. Thank you. Let's make this three minutes instead of give you a little more time because we're going over there. Thank you. I appreciate it. Just a few points. First, on liability and damages and all of that, I think I heard Mr. Klein's counsel concede that the basis for saying there was marketable title here is just an inference drawn from payment. That may work for the one-third, at least at the moment, of payment. It just doesn't work for the two-thirds because the inference you draw from payment, from sheeting to unclaimed property, is simply compliance with the PRSA. I really don't know what it is that he thinks we should have done. Apparently, he thinks we should have just pocketed the money when we thought nobody had marketable title, which just would have violated the PRSA in a different way since we are not allowed to do that. We have to continue to segregate it. So you cannot draw an inference from the mere fact that we sheeted funds over to state unclaimed property and said, we're not sure. Maybe this person owns them. We're not sure. Maybe they don't. Maybe we have no idea who owns them. You cannot take that as a concession that anyone has marketable title. If anything, it's powerful evidence that someone doesn't because when people had marketable title, we paid them. We paid people 99% of the time, not only on time but a month early. So if we thought someone had marketable title, we wanted to pay them. We didn't want to be paying them interest. We're sending money to unclaimed property because we couldn't figure that out. And I think I just heard that Mr. Klein agreed. There is no evidence in this record from which you could find marketable title other than the mere fact that we sheeted funds to unclaimed property. So that just doesn't work when it comes to the two-thirds. And that's not just even a matter of damages. That's a matter of liability. I also heard him agree. You can't collect any interest if you didn't even have marketable title at all. So we don't have any evidence that that chunk of the class had standing, that there's liability as to them because we don't know if they're the right people. That apparent owner's name might be the wrong name and someone else entirely has marketable title or nobody has it. I'll just say a few quick words on interest and impunitive damages on interest. I think what Your Honor was suggesting is exactly right, that grammatically the until the day paid has to modify a noun. And the only thing in the statute is that portion, not timely paid, that portion. The words that come earlier are making clear that it's the portion of proceeds. So there's just no work for that language to do unless it's cutting it off once the proceeds are paid, which of course has been a hotly disputed issue for decades. Do you agree that that would somehow nullify compound interest as counsel said? I don't think it would because it compounds during the period you haven't paid proceeds. And we never disputed that. So if we don't pay someone proceeds for two years, it's going to be compounding during that period and they're going to get that interest on, essentially interest on interest then, but it's going to cut off once we pay proceeds. Would they have needed the addendum for that though? I think the reason you sort of needed to add that, you didn't need it for that because everyone always thought the statute did that. The Attorney General thought that back in 1989. This language came along in 1992. So the best understanding is it was actually trying to curtail what the Attorney General had thought the statute did and say, no, no, it doesn't compound indefinitely. It cuts off on the day that the proceeds are paid. Unless you wanted me to answer any questions about punitive damages. Sorry, I didn't have a chance to do that. You said you wanted to say something about punitive damages. Why don't you go ahead. Yeah, I just wanted to say, so I don't think there's any principled basis to say that this is a contract claim for purposes of statute of limitations, but not somehow when it comes to punitive damages. And if you look at those cases, it's not just base. It's also going back to the Krug case and the Purcell case. The court is repeatedly saying the claim itself is a contractual claim, not in the particular facts at hand in any given case. They're saying the right to proceeds always arises at some level from a lease or a contract or whatever it is. And that's why this is a contractual claim. So the only theory you can get there under is the Reform Act. And under the Reform Act, you need individualized evidence that you knew who was entitled to money and didn't give it to them. And boy, you can't say that for this whole class when we still don't even know who some of the members of this class are. Thank you, Your Honors. Thank you, Counsel. Thanks to both of you for the arguments this morning. The case will be submitted. And Counsel are excused.